construction as the majority has done) results, in the post-marital context, in the statute being disregarded concerning the very subject which the legislature presumably intended it to control.

Thus, I would approach the issue before us as a straightforward question of statutory interpretation: Does the term "communications" as used in Section 5914 encompass conduct as well as verbal communications? Applying the principle that the words of a statute are to be construed according to their common and approved usage, *see* 1 Pa.C.S. § 1903(a), I would conclude that it does not. Accordingly, I agree with the majority that the trial court did not err in permitting Appellant's ex-wife to testify about Appellant's actions on the night of the fire.

Concerning the question of credit for time served, I must respectfully dissent from the analysis set forth by Mr. Justice Zappala. For the reasons articulated by Mr. Justice Castille in his Concurring and Dissenting Opinion, which I join, I do not believe the legislature intended that a defendant who has been sentenced to a period of total confinement in a state correctional institution should receive credit against such sentence for time spent in a home confinement/electronic monitoring program pursuant to the terms of a bail order prior to trial and/or pending appeal.

As this Court observed in *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991), "[n]umerous provisions of the Sentencing Code ... demonstrate a legislative intent that sentences of imprisonment are to be served in institutional settings." *Id.* at 94, 588 A.2d at 900. A similar understanding prevails in the federal system. *See Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (concluding that a federal prisoner is not entitled to credit against his sentence for the period when he was released on bail).[1]

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Melissa A. ASKINS, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 3, 2001.

Decided Sept. 26, 2001.

---

1. Like Mr. Justice Nigro, I would not foreclose the possibility that, in a particular case, circumstances may warrant the recognition of credit for time served to avoid a manifest injustice to the defendant. *See generally Kriston*, 527 Pa. at 97–98, 588 A.2d at 901 (awarding credit for the portion of the defendant's sentence served in an electronic home monitoring program to which the defendant had been transferred at the unauthorized initiative of the prison warden). In my view, however, Appellant has failed to demonstrate that this is such a case. As the sole source of his mistaken belief that credit would be given for time spent on bail release, Appellant cites the Lackawanna County Home Detention Pro-

gram Rules and Regulations, a copy of which is included in the reproduced but not the original record. Provision of this document to a defendant released on bail may have been erroneous; references to contact with the Probation and Parole Office and to payment of fines or restitution suggest that these rules and regulations were designed for inmates who are serving a form of intermediate punishment. Nevertheless, the document makes no reference to receiving credit for time served in the program, and I am not persuaded that this document, without more, would have warranted a justifiable expectation that such credit would be given or, more fundamentally, would establish a manifest injustice.

## *ORDER*

PER CURIAM:

Appeal dismissed as having been improvidently granted.

**Shirley L. BELL and Thomas P. Bell, her husband, Petitioners,**

v.

**Joseph A. SLEZAK, M.D., Joseph A. Slezak, M.D. Ltd., L. Alan Egleston, M.D., and Frick Community Health Center, Respondents.**

Supreme Court of Pennsylvania.

Oct. 4, 2001.

## *ORDER*

PER CURIAM.

**AND NOW,** this 4th day of October, 2001, the Petition for Allowance of Appeal is granted, limited to the following issues.

a. Whether the "Non-duplication of Recovery" provision of the Pennsylvania Property and Casualty Insurance Guaranty Association Act ("PPCIGA" Act) operates to alter the express terms of a clear, unambiguous and otherwise fully enforceable settlement agreement, entered into by the parties in order to resolve a medical malpractice liability claim, where the settlement is reached before a defendant physician's medical malpractice liability insurer is declared insolvent.

b. Whether, where the Pennsylvania Property and Casualty Insurance Guaranty Association ("Association") stands in the shoes of an insolvent medical malpractice liability insurance carrier and thereby provides liability insurance coverage to a physician accused of malpractice, the PPCIGA Act's "Non-duplication of Recovery" allows the Association to reform a prior settlement agreement so as to claim an offset in an amount equal to medical benefit payments paid by the health insurance carrier of the person asserting the malpractice claim against the physician.

c. Assuming that the PPCIGA Act's "Non-duplication of Recovery" provision may limit the Association's obligation to pay claims, whether a physician whose medical malpractice liability insurer becomes insolvent is thereby entitled to blanket immunity from personal liability for their tortuous conduct.